IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOSEPH LIBBEY                                                                PLAINTIFF

                 v.                  Civil No. 05-2102

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                        DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff Joseph Libbey brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI) pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423, and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural and Factual Background**

The plaintiff filed his applications for DIB and SSI on May 13, 2002, alleging an onset date of March 25, 2002. (Tr. 61.) Plaintiff was eligible for DIB through December 21, 2004. (Tr. 52.) The applications were initially denied (Tr. 26, 586). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 32, 591.)

On June 2, 2004, a hearing was held by the ALJ in Mount Pleasant, Michigan. Prior to the hearing, plaintiff had moved to Arkansas. (Tr. 636.) The plaintiff was represented by counsel at this hearing. (Tr. 625.) The ALJ issued an unfavorable ruling on October 1, 2004,

deciding that the plaintiff was not disabled within the meaning of the Act. (Tr. 14-22.) The plaintiff then requested a review of the hearing by the Appeals Council (Tr. 12), which denied that request on May 6, 2005 (Tr. 6-8); thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed his complaint with this court on July 11, 2005, seeking judicial review of that decision. (Doc. 1.) Both parties have filed appeal briefs with the court. (Docs. 8-9.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 5.)

In his application and the supporting documents, plaintiff alleged that he was disabled due to triple bypass heart surgery and the resultant medications that he was required to take, which caused fatigue. (Tr. 61.) Plaintiff quit working in August 1998 in order for him to stay at home and care for his wife. (Tr. 61.) His past relevant work included that of a garbage truck driver, mill worker, fruit packer, newspaper route driver, and yard worker. (Tr. 62, 74-81, 99.)

Plaintiff alleges that he became unable to work on March 26, 2002. (Tr. 61.) The medical evidence submitted shows that on April 15, 2002, plaintiff reported to an emergency room with complaints of severe chest pains that had been occurring intermittently since March 26, 2002. He had recently seen Dr. Heidi Stelter, who had scheduled plaintiff for a cardiac evaluation. (Tr. 102, 459-460.) On April 18, 2002, plaintiff underwent a coronary artery bypass grafting times three to treat his coronary artery disease. (Tr. 114-297.) The surgeon, Dr. Behrooz-Brucs Shabahang, noted that plaintiff had a history of hyperlipidemia and smoking and had positive risk factors for coronary artery disease including a positive family history, hypercholesterolemia, smoking, and obesity. (Tr. 123.) Plaintiff was discharged on April 23, 2002. (Tr. 113.)

One week after the bypass surgery, plaintiff was admitted to the hospital on complaints of diarrhea, weakness, and dizziness. He was diagnosed with "new onset atrial fibrillation with fast ventricular response." (Tr. 298-405.) After three days, plaintiff was discharged with prescriptions for Cardizem CD, Lopid, Rythmol, and daily aspirin; and with directions to follow up with a cardiologist in ten days. (Tr. 304-305.)

On May 2, 2005, plaintiff presented to another emergency room on complaints of diarrhea and shortness of breath. (Tr. 407-408.) He was discharged the following day with directions to take Cardizem CD, Xanax, Mevacor, Immodium, aspirin, and Tagament, and to discontinue the Lopid. (Tr. 415.)

On May 10, 2002, plaintiff saw Dr. Maurice Norman, a cardiologist, for reevaluation. Dr. Norman noted plaintiff's medical history since the bypass surgery and directed plaintiff to continue on the prescribed medications and on the low cholesterol and low saturated fat diet. (Tr. 467-468.) On May 25, 2002, plaintiff saw Dr. Heidi Stelter, D.O., for an outpatient evaluation. Dr. Stelter noted that plaintiff had seen his thoracic surgeon, who opined that plaintiff's wounds from his bypass surgery were healing well. Dr. Stelter noted that plaintiff was still smoking and prescribed Wellbutrin to assist plaintiff in stopping smoking. She stressed the importance of quitting smoking. (Tr. 444.)

On August 29, 2002, plaintiff saw Dr. Maurice Norman, a cardiologist, for an evaluation. Dr. Norman noted that plaintiff was walking one half to one mile a day only two to three days per week and that plaintiff continued to smoke a pack and a half of cigarettes a day. Dr. Norman noted some edema of the left leg from which the saphencus vein was harvested to construct the bypass grafts. Dr Norman recommended that plaintiff walk four to five days per week and to

stop smoking as soon as possible. (Tr. 462-463.)

On January 7, 2003, plaintiff was admitted to the hospital after presenting at the emergency room with complaints of chest discomfort, severe cough, fever, chills, and generally not feeling well. Dr. Rashmi Juneja, M.D., diagnosed plaintiff with chronic obstructive pulmonary disease (COPD) exacerbation, cough, fever, leukocytosis, lower extremity edema, and coronary artery disease. Regarding the COPD exacerbation, Dr. Juneja noted that plaintiff was doing better and was to continue with antibiotics upon discharge. Dr. Juneja also counseled plaintiff on his tobacco abuse. (Tr. 479-482.)

On February 19, 2003, plaintiff saw Dr. Anthony Foster for clearance to under repair of an incisional hernia. Dr. Foster noted that plaintiff was smoking a pack of cigarettes a day. Plaintiff also reported exertional dyspnea when walking more than 100-150 feet, especially on an incline. Dr. Foster noted that plaintiff had a history of coronary disease, intermittent atrial fibrillation, symptomatic GERD, prolonged tobacco abuse, COPD, colon polyps, and hypercholesterolemia. Dr. Foster opined that plaintiff's COPD, atrial fibrillation, and GERD appeared to be well controlled with medications. Dr. Foster recommended that plaintiff avoid general anesthesia unless surgery was unavoidable. Dr. Foster referred plaintiff to Dr. Norman for a cardiac evaluation. (Tr. 549.) On March 10, 2003, plaintiff saw Dr. Norman for clearance to undergo repair of an incisional hernia. Dr. Norman again noted plaintiff's cigarette smoking and strongly recommended that he abstain from cigarette smoking. (Tr. 507.) On April 3, 2003, plaintiff underwent laparoscopic repair of his incisional hernia. (Tr. 521.)

On May 14, 2003, Dr. Foster saw plaintiff for complaints of left foot and leg swelling. Plaintiff reported cramping and discomfort with even short episodes of walking. Dr. Foster

-4-

prescribed Lasix. (Tr. 540.) On June 17, 2003, plaintiff reported that "his legs become uncomfortable at times but overall [are] asymptomatic." (Tr. 539.) On July 22, 2003, Dr. Anthony Foster saw plaintiff for a recheck on his complaints of leg swelling. Plaintiff told Dr. Foster that "his legs continue to be puffy on occasion, but overall they are a little better." Plaintiff stated that elevation of his legs tended to help the condition. Plaintiff also stated that he was suffering from nonexertional chest pressure that lasts several minutes but then spontaneously resolves. (Tr. 534.)

On December 29, 2003, plaintiff reported to an emergency room for complaints of chest pain and tightness. Upon arrival, he received relief with sublingual nitroglycerin. Plaintiff reported that the pain had started five hours before he arrived at the emergency room. He did not take any nitroglycerine because he did not like to take medications. He reported that he had been experiencing similar discomfort that lasted two to three minutes and then resolved spontaneously. Instead of taking nitroglycerin, plaintiff treated his pain discomfort by pounding on his chest with his fist. Plaintiff was discharged the following day with a diagnosis of arteriosclerotic heart disease with stable angina status post coronary artery bypass graft surgery from 2002, decreased left ventricular ejection fraction of 42%, hypertension, hyperlipidemia, gastroesophageal reflux disease, and tobacco use. Again, plaintiff was "highly encouraged to completely quit smoking." (Tr. 555-562.)

In March 2004, plaintiff saw Dr. Michael Miranda at the Booneville Family Clinic in Booneville, Arkansas, as a new patient. Dr. Miranda ordered some medical tests for hyperlipidemia and hypertension. He counseled the plaintiff to stop smoking. Dr. Miranda noted negative leg edema and some trace right leg edema. In a follow up examination on May

AO72A
(Rev. 8/82)

10, 2004, Dr. Miranda noted that plaintiff's hypertension was better controlled by replacing Accupril with Lisinopril, that his chest pains respond to nitroglycerin, that the hyperlipidemia remained high, and that plaintiff should attempt to lose weight. Again, Dr. Miranda counseled plaintiff on smoking cessation. (Tr. 569-570.) Included with the records is a form completed by Dr. Miranda to help the plaintiff obtain a handicap license plate. According to the form, Dr. Miranda found plaintiff permanently disabled and unable to walk 100 feet without stopping to rest. (Tr. 571.)

At the time of the hearing, plaintiff was 54 years of age and had completed seventh grad in school. (Tr. 627-628.) He testified to his past relevant work in lawn care, newspaper delivery, and garbage collection. (Tr. 629-630.) He claimed that his disability is due to numbness and swelling in his left leg and problems with his left arm. He testified that he gets pains in his chest for which he takes nitro pills. (Tr. 633.) These pains sometimes occur multiple times in a day or he can go a couple of days without pain. (Tr. 635.) Plaintiff testified that he becomes dizzy 90% of the time when he stands from a bending position. The dizziness will continue until he is able to "stand up and get [his] bearings right." (Tr. 640.) Plaintiff stated that he has some shortness of breath with exertion such as playing with his grandchildren or walking. Plaintiff testified that the most physically active thing he does is "sit in [his] easy chair and watch a little bit of TV or sit out on the porch and watch the birds." Plaintiff stated that he would be able to walk 100 feet or stand for twenty to thirty minutes before his leg would become too numb to stand any longer, also he can sit in a chair for only one half of an hour to an hour before his leg becomes numb. (Tr. 640-643.) Plaintiff testified that he could not pick up a ten pound bag of potatoes from the bottom of a grocery store shelf and put them in a grocery cart because of pain

-6-

in his arm. He no longer retrieves mail from his mailbox, mows grass, or carries groceries into the house from the car. (Tr. 646-647.)

A vocational expert testified that plaintiff's past relevant work was that of a light to medium level and unskilled nature. (Tr. 652.) If the plaintiff had the physical limitations he testified to, the VE opined that plaintiff could not perform any work at all. (Tr. 652.) If the plaintiff had a residual functional capacity (RFC) to do light work with a sit/stand option, he could not perform his past relevant work, but could perform work as an assembler of light products made of plastics (8,000 jobs), an inspector or packager (8,000 jobs), security monitor (2,000 jobs), and parking attendant (1,000 jobs). These jobs would require occasionally lifting over ten pounds and have a sit/stand option. (Tr. 654.)

In his opinion, the ALJ found that plaintiff's only severe impairments were those of coronary artery disease and hypertension. The complaints about numbness in the left leg and arm are related to plaintiff's cardiac problems, including his bypass surgery. In discrediting plaintiff's subjective complaints of pain, the ALJ found (1) that there was a "paucity" of objective medical evidence to support the alleged symptomatology, (2) that plaintiff has not required any further surgical treatment for his heart condition, has been reluctant to take prescribed medications, and has continued smoking despite repeated recommendations to stop, (3) that despite his claim that he is unable to work, plaintiff is able to care for his personal needs such as shopping for clothes or food and reading and watching television, and (4) that no treating physician has expressed an opinion that plaintiff is disabled to a greater degree than that found by the ALJ. The ALJ found that plaintiff could not perform his past relevant work, however with an RFC to perform light work with a sit-stand option, plaintiff could perform work such as security monitor, parking lot

attendant, and assembler, with 11,000 such jobs in the Michigan regional economy (Tr. 17-22.)

Plaintiff presented to the Appeals Council a Physical Residual Functional Capacity Evaluation purportedly completed by Dr. Miranda.[1] According to this evaluation, plaintiff could, in an eight-hour work day, sit five to ten minutes, stand ten to fifteen minutes, and walk for five minutes at a time; sit for two hours, stand for thirty minutes, and walk for thirty minutes total; would need assistive devices to stand and walk, could occasionally lift up to ten pounds, and never left more than ten pounds; could occasionally carry up to five pounds, rarely carry up to ten pounds, and never carry more than ten pounds; was limited in use of both right and left legs; could never push/pull, work in extended position, work above shoulder level, work overhead, or reach; could occasionally gasp with right hand but never grasp with left hand; could occasionally finger with right hand but never finger with left hand; and could never do fine manipulation with either hand. The RFC evaluation also indicates that plaintiff is limited to only occasional stooping and crouching, rare bending, and never squatting, crawling, or climbing of stairs, ladders, or inclines. Regarding environmental restrictions, the assessment placed total restriction on plaintiff's abilities concerning unprotected heights; being around moving machinery; exposure to marked changes in temperature and humidity; exposure to dust, fumes, and gases; driving; and vibrations. In response to a question concerning what the primary

---

[1]This physical RFC evaluation (Tr. 616-618) does not contain a fourth page or the signature of the physician who completed the assessment. The plaintiff has attached the purported last page of this assessment to his brief. (*See* Doc. 8 at p. 20.) The Commissioner questions the authenticity of this fourth page, noting that the RFC in the record "is a check off form and includes handwritten checks and circles and one type written section," while the fourth page submitted by the plaintiff "contains a comments section with only handwritten comments." The Commissioner questions "why the same report would include comments sections with both typewritten and handwritten comments." (*See* Doc. 9 at p. 8.)

AO72A
(Rev. 8/82)

impairments are which produced the limitations indicated, the doctor responded

> Chronic angina-type chest pain: exertional dyspnea, together with recurrent numbness of left arm and hand; status post triple vessel coronary artery bypass surgery, secondary to ASHD, which can reasonably be expected to affect non-exertional factors such as: memory, concentration, handling stress; relating to or dealing with others; being regular in attendance; behaving in an emotionally stable manner; functioning independently; or completing a normal workday or week without interruptions from pain and psychologically-related symptomatology; perform at a consistent pace without an unreasonable number or length of rest periods; set realistic goals; make plans independently of others; maintain social functioning or maintain acceptable levels of concentration, persistence, and pace; plus restriction of activities of daily living.

(Tr. 616-118.)

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**

On appeal, the plaintiff argues that the ALJ erred in (1) failing to find plaintiff's chronic obstructive pulmonary disease (COPD) a severe impairment, (2) improperly discrediting plaintiff's subjective complaints, (3) determining plaintiff's RFC, and (4) in determining that

there are other jobs plaintiff could perform. (Doc. 8.) In response, the Commissioner argues that the RFC is supported by substantial evidence, the ALJ did properly evaluate plaintiff's subjective complaints, and the ALJ properly found plaintiff could perform other light work. Concerning the COPD issue, the Commissioner argues that because a medical report showed that plaintiff's COPD was controlled with medication, it could not be considered a disabling condition. (Doc. 9.)

After the ALJ rendered his decision, plaintiff presented additional evidence to the Appeals Council, including a Physical RFC evaluation reportedly completed by plaintiff's treating physician, Dr. Miranda. (Tr. 616-618.)

According to 20 C.F.R. § 404.970(b):

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.

Thus, the Appeals Council *must* consider evidence submitted with a request for review if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Box v. Shalala,* 52 F.3d 168, 171 (8th Cir.1995) (*quoting Williams v. Sullivan*, 905 F.2d 214, 216-17 (8th Cir.1990)). To be "new," evidence must be more than merely cumulative of other evidence in the record. *See Williams v. Sullivan,* 905 F.2d at 216 (concluding that psychiatrist's report was new because it was not merely cumulative but instead presented more specific findings and conclusions). To be "material," the evidence must be relevant to claimant's condition for the time period for which benefits were denied. *See id.* Thus, to qualify as

-11-

"material," the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. *See Jones v. Callahan,* 122 F.3d 1148, 1154 (8th Cir.1997) (holding immaterial evidence detailing a single incident occurring after decision and noting proper remedy for post-ALJ deterioration is a new application); *Williams v. Sullivan,* 905 F.2d at 216 (finding that despite failure to identify onset date, doctor's report was material because it provided sufficient basis to conclude it related to the relevant time). Further, there must be a reasonable likelihood that it would have changed the determination. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1025 (8th Cir.2002).

In the instant matter, the ALJ states in his decision that no treating or examining doctor has expressed an opinion inconsistent with the ALJ's RFC determination. In light of Dr. Miranda's evaluation, this statement is not accurate. For instance, Dr. Miranda finds that plaintiff would be unable to sit for more than two hours in an eight-hour work day, and could stand and walk no more than 30 minutes in an eight-hour work day.

These records were not before the ALJ at the time he rendered his decision. Thus, the ALJ's RFC determination is not supported by substantial evidence of record, in light of the additional evidence submitted to and considered by the Appeals Council. For this reason, this matter must be remanded for proper analysis of all of the evidence pertaining to plaintiff's alleged impairments. The undersigned finds there is a reasonable likelihood that the additional evidence would have changed the ALJ's determination. *See Krogmeier v. Barnhart*, 294 F.3d at 1025.

Also, on remand, the ALJ should consider plaintiff's alleged impairment due to COPD, as plaintiff testified at the hearing that he has some difficulty with breathing after playing with

AO72A
(Rev. 8/82)

his grandchildren or after walking. The ALJ recognized that plaintiff had been diagnosed with this condition upon hospitalization on January 7, 2003 (Tr. 19), but the ALJ failed to make a severity determination or an analysis of this alleged impairment.

The procedure of terminating the process at step two has been upheld by the United States Supreme Court in *Bowen v. Yuckert,* 482 U.S. 137, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). In *Brown v. Bowen,* 827 F.2d 311 (8th Cir.1987), the United States Court of Appeals for the Eighth Circuit discussed the impact of *Yuckert* and noted:

> On June 8, 1987, the Supreme Court held that the second step of the sequential evaluation process was not per se invalid. See *Bowen v. Yuckert,* 482 U.S. 137, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). In regard to the application of that standard, however, a majority of the Court adopted a standard which provides that '[o]nly those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits without undertaking' the subsequent steps of the sequential evaluation process. *Id.* 482 U.S. at 158, 107 S.Ct. at 2299.

*Brown v. Bowen,* 827 F.2d at 312.

Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by medical record. *Johnston v. Apfel,* 210 F.3d 870, 875 (8th Cir. 2000); *see also Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000) (plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation). Thus, the plaintiff did have the burden of showing a severe impairment that significantly limited her physical or mental ability to perform basic work activities, but the burden of a plaintiff at this stage of the analysis is not great. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Here, there are medical records that support plaintiff's claim of COPD, and plaintiff did testify to symptoms at the hearing which could be the result of COPD. Therefore, on remand,

-13-

AO72A
(Rev. 8/82)

the ALJ is directed to consider plaintiff's COPD claims.

Finally, the ALJ is reminded that the administrative hearing is to be non-adversarial in nature. *See Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004.) The court is troubled by the ALJ's obvious conclusory comments made to the plaintiff at the hearing. On remand, the ALJ is reminded of his obligation to approach the hearing without first drawing conclusions as to the plaintiff's disability.

The undersigned acknowledges that the ALJ's decision may be the same after proper analysis. Nonetheless, proper analysis must occur. *Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991).*

**Conclusion:**

Accordingly, we conclude that the decision of the ALJ herein, denying benefits to the Plaintiff, is not supported by substantial evidence of record, and should be reversed. This matter should be remanded to the Commissioner for reconsideration consistent with this opinion.

DATED this 7th day of August 2006.

                                                     **/s/ Beverly Stites Jones**
                                                  _____
                                                  HON. BEVERLY STITES JONES
                                                  UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)